UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. 2:17-CR-66 |
| | ) | |
| CURTIS CARPENTER | ) | |

## PLEA AGREEMENT

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, Curtis Carpenter, and the defendant's attorney, William L. Ricker, have agreed upon the following:

1. The defendant will plead guilty to the following count in the indictment:

    a) Count One, conspiracy to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1),(b)(1)(A).

    b) The punishment for this offense is as follows:

    A minimum mandatory term of imprisonment of not less than 10 years, and up to life; a fine of $10,000,000; and a period of supervised release of at least 5 years; and a $100 special assessment.

2. In consideration of the defendant's guilty plea, the United States agrees to move the Court at the time of sentencing to dismiss the remaining counts against the defendant in this indictment.

3. The defendant has read the indictment, discussed the charges and possible defenses with defense counsel, and understands the crimes charged. Specifically, the elements of the offense are as follows:

a. Defendant and at least one other person conspired to distribute and possess with the intent to distribute methamphetamine in violation of 21 U.S.C. §841(a)(1),

b. Defendant knowingly and intentionally joined in the conspiracy,

c. Defendant participated in the conspiracy,

d. the conspiracy involved the distribution or possession with the intent to distribute at least 50 grams of actual methamphetamine.

4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

a) In 2016, the Federal Bureau of Investigation, (FBI) along with the Hawkins County Sheriff's Office (HCSO) and the 3rd Judicial District Drug Task Force (3rd DTF) began an investigation into an evolving methamphetamine distribution network that distributed multiple kilogram quantities of methamphetamine monthly in and around the Hawkins County area of the Eastern District of Tennessee. This organization obtained kilograms of methamphetamine, a schedule II controlled substance, from trans-national criminal organizations and other methamphetamine suppliers located inside and outside the State of Tennessee. The typical flow of the methamphetamine involved the drug flowing through co-defendant David Jones in north Georgia and then into the Eastern District of Tennessee where it was distributed down the supply chain by members of the charged conspiracy. The defendant admits that he conspired to distribute over 50 grams of actual methamphetamine, a schedule II controlled substance, in the Eastern District of Tennessee. Specifically, the defendant admits that he sold resale quantities of methamphetamine that he obtained from co-defendants Jonathan Delph, who was supplied by David

Jones.

b)   During the course of the investigation, law enforcement officers developed a confidential informant (CI) that could purchase methamphetamine from Carpenter. On October 26, 2016, the (CI) told law enforcement they could purchase drugs from Carpenter at parking lot at a Food City in Rogersville, Tennessee. The informant was given $200 in 3rd DTF confidential funds and a recording device. The CI went with undercover agents to the Food City parking lot, where Carpenter was operating out of a red Chevy S-10. The CI exchanged the money with Carpenter for a baggie containing approximately 3 grams of methamphetamine.

c)   On November 28th, 2016 a CI was sent to the same Food City parking lot with a recording device and $200 in 3rd DTF confidential funds. Upon arrival, Carpenter told the informant to meet him at Jonathan Delph's residence (420 Petersburg Road, Rogersville, Tennessee) instead. At Delph's residence, the CI sat in his vehicle where he/she and Carpenter exchanged the money for a baggie containing approximately 3 grams of methamphetamine.

d)   On December 8th, a CI told law enforcement that Carpenter was selling methamphetamine from his residence at 697 Lee Valley Rd., Whitesburg, Tennessee. The CI was given a recording device and $350 in 3rd DTF confidential funds and instructions to attempt to purchase methamphetamine from the defendant. Carpenter's residence was a mobile home behind his parents' house. The CI was taken to Carpenter's bedroom, where he/she saw three firearms laying on the bed. Carpenter also claimed to have a silencer. The informant gave him the money to Carpenter and received approximately 7.3 grams of methamphetamine in two small bags in exchange.

e)   On December 14, 2016 a search warrant was executed at Carpenter's residence. Law enforcement recovered approximately 4 grams of methamphetamine, pipes, spoons/needles, a

Maryland police badge, a police scanner, digital scales, two firearms, a surveillance system, and a variety of bullets/shotgun shells. The firearms, further described as a Master Piece Arms; Model: MPA10T-A; .45 caliber ACP Pistol and a CBC; Model SB; 12 gauge single shot shotgun, were examined by ATF Agent Williams and were determined to have been manufactured outside the state of Tennessee and therefore affected interstate commerce.

  f) Carpenter has participated in several *Mirandized* interviews and admitted to selling methamphetamine on behalf of co-defendant Jonathan Delph approximately 10 times per month. Carpenter admitted that he was aware that Jonathan Delph's methamphetamine was sourced through David Jones. Carpenter now affirms that the information he provided during these interviews was truthful and accurate, although there may be additional details that did not emerge during the course of the interviews.

  g) For the purposes of this plea agreement, the parties agree that a 2 level enhancement for maintaining a dwelling under §2D1.1(b)(12) should apply to this defendant.

  h) For the purposes of this plea agreement, the parties agree that a 2 level enhancement for possessing a firearm under §2D1.1(b)(1) should apply to this defendant.

  i) For the purposes of this plea agreement, the parties agree that the defendant should be held individually responsible for at least 150 grams but less than 500 grams of actual methamphetamine.

  5. The defendant is pleading guilty because the defendant is in fact guilty. The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

    a) the right to plead not guilty;

    b) the right to a speedy and public trial by jury;

    c)  the right to assistance of counsel at trial;

    d)  the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

    e)  the right to confront and cross-examine witnesses against the defendant;

    f)  the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

    g)  the right not to testify and to have that choice not used against the defendant.

  6.  Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offense(s), including violations of conditions of release or the commission of any additional offense(s) prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

  7.  The defendant agrees to pay the special assessment in this case prior to sentencing.

  8.  Financial Obligations. The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If the defendant cannot pay the full

amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

      a)      If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

      b)      The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

      c)      If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

9. The defendant acknowledges that the principal benefits to the United States of a plea agreement include the conservation of limited government resources and bringing a certain end to the case. Accordingly, in consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offense(s) committed, the defendant voluntarily, knowingly, and intentionally agrees to the following:

    a) The defendant will not file a direct appeal of the defendant's conviction(s) or sentence with one exception: The defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater. The defendant also waives the right to appeal the Court's determination as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence.

    b) The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence, with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

    c) The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

10. This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this

plea agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this plea agreement in any way (including but not limited to failing to enter guilty plea(s) as agreed herein, moving to withdraw guilty plea(s) after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea(s) in this case.

11. The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

12. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

|                  |     |                                                           |
|------------------|-----|-----------------------------------------------------------|
| _10/18/17_<br>Date | By: | _/s/ J. Christian Lampe_<br>J. CHRISTIAN LAMPE<br>Assistant United States Attorney |
| _10-7-17_<br>Date |     | _/s/ Curtis Carpenter_<br>CURTIS CARPENTER<br>Defendant |
| _Oct. 7, 2017_<br>Date |     | _/s/ William L. Ricker_<br>WILLIAM L. RICKER<br>Attorney for the Defendant |

NANCY STALLARD HARR
UNITED STATES ATTORNEY