## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:17-CR-66 |
| | ) | |
| CURTIS CARPENTER | ) | |

## MOTION FOR COMPASSIONATE RELEASE

Defendant Curtis Carpenter through undersigned counsel, hereby moves this Honorable Court pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) to reduce his sentence to time served or in the alternative, to order he serve the balance of his sentence on Home Confinement or Supervised Release. As amended by the First Step Act, the compassionate release statute allows courts to reduce sentences for "extraordinary and compelling" reasons. The growing coronavirus pandemic is an extraordinary and compelling circumstance. The coronavirus and the disease it causes is currently present and extremely dangerous in the prison facility in which Mr. Carpenter is confined, and likely to be present and dangerous in any other correctional institution. Because of his underlying health conditions, Mr. Carpenter is among those at highest risk of death or serious illness if he is exposed to the disease. He has hypertension, diabetes, obesity, hyperlipidemia, and a history of pneumonia. These conditions, especially in combination, place him at heightened risk of death or serious illness if he contracts COVID-19. His immediate release is necessary.

**I.     Statutory Framework for Sentence Reduction Authority Under 18 U.S.C. § 3582(c)(1)(A)(i)**

The Sixth Circuit succinctly set forth the statutory framework established by the First Step Act for considering a compassionate release request filed on behalf of a prisoner. *United States v. Hampton*, ___ F.3d ___ (6th Cir. Jan. 19, 2021).

By statute, three substantive requirements must be met before a district court may grant compassionate release. 18 U.S.C. § 3582(c)(1)(A); *Ruffin*, 978 F.3d 1000, 1004–05

(6th Cir. 2020). First, the court must determine that "extraordinary and compelling reasons warrant" a sentence reduction. *Ruffin*, 978 F.3d at 1004 (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Second, the court must find that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission, see U.S.S.G. § 1B1.13. *Ruffin*, 978 F.3d at 1005. Third, the court must consider the applicable § 3553(a) factors. *Id*.; *see* 18 U.S.C. § 3582(c)(1)(A).

Historically, only the Bureau of Prisons was authorized to seek an inmate's release under § 3582(c)(1)(A). *See Jones*, 980 F.3d 1098, 1104 (6th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A) (1984)). But with the passage of the First Step Act, a prisoner may bring such a motion on his own accord, a practice we now see somewhat routinely in light of the COVID-19 pandemic. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). And when a prisoner does so, the First Step Act renders U.S.S.G. § 1B1.13 inapplicable, meaning district courts enjoy "full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Jones*, 980 F.3d at 1111. That leaves a district court to focus on steps one and three, as it may now "skip step two of the § 3582(c)(1)(A) inquiry." *Id*.

*Hampton* gives this Court full discretion to determine what is extraordinary and compelling in each individual case that comes before the Court. Mr. Carpenter asks this Honorable Court to consider his circumstances as establishing extraordinary and compelling reasons to justify the reduction in his sentence.

## II. Relevant Facts and Procedural History

Mr. Carpenter has been in custody since his arrest on July 19, 2017, now for approximately 43 months. He was convicted of conspiracy to distribute 50 grams or more of methamphetamine and sentenced to 172 months' incarceration. Mr. Carpenter is scheduled to be released from the BOP on September 30, 2029. Mr. Carpenter now faces the threat of dying a painful death behind bars due to COVID-19, exacerbated by his serious health conditions.

With the proper conditions in place on supervised release or home confinement, Mr. Carpenter would present virtually zero risk of danger to the community. He is more than willing to comply with any conditions the Court and probation department see fit. Due to his health

conditions, Mr. Carpenter is at high risk of death or serious illness if he is exposed to Covid-19. Thus, he wishes to quarantine himself and protect himself from this virus.

**III. Mr. Carpenter has exhausted administrative remedies pursuant to 18 U.S.C. § (c)(I)(A)(i).**

Mr. Carpenter requested a release from the Warden on April 12, 2020 and was denied on April 22, 2020. (See Exhibit 1, Warden's Denial). It appears Mr. Carpenter has now exhausted the available administrative remedies provided through the Bureau of Prisons.

It has also become clear that the BOP will not endorse a compassionate release motion based on an elevated risk from Covid-19. (See Exhibit 2, Petrossi Denial Letter.) That is because the BOP's Program Statement does not make a pandemic "a qualifying factor that would warrant a motion be filed with the sentencing court." *Id.*

**IV. BOP Precautions Have Not Been Effective in Protecting Inmates from COVID-19**

COVID-19 has infected more than 15.5 million people worldwide, leading to more than 634,766 deaths. *Coronavirus COVID-19 Global Cases*, Center for Systems Science and Engineering (CSSE) at Johns Hopkins University, https://coronavirus.jhu.edu/map.html (updating regularly) (last accessed July 24, 2020).

A number of judges have found the BOP's response to the COVID-19 pandemic to be inadequate. *See United States v. Hammond,* 2020 WL 1891980, at *9 (D.D.C. Apr. 16, 2020) (responding to the government's argument that "BOP is prepared to deal with pandemics such as the coronavirus" by noting the hundreds of positive cases and sixteen inmate deaths that resulted "[d]espite the precautions taken by BOP; *United States v. Atkinson,* 2020 WL 1904585, at *3 (D. Nev. Apr. 17, 2020) (noting the "obvious shortcomings" in BOP's Action Plan and expressing dissatisfaction with BOP's response to the defendant's application for compassionate release).

3

COVID-19 has spread quickly in the BOP, reaching at least 146 locations. 848 inmates and 1,615 staff members are confirmed positive as of March 4, 2021. There have been 46,876 inmates and 4,907 staff members that have recovered as of March 4, 2021. Additionally, 224 inmates and 4 staff members have died. www.bop.gov/coronavirus (providing daily tallies of confirmed infections) (last accessed March 4, 2021). And these are just the confirmed infections. "It is unknowable whether BOP detainees or inmates have COVID-19 until they are tested, and BOP has not conducted many or any such tests because, like the rest of the country, BOP has very few or no actual Covid-19 test packets." Order at 5, *United States v. Caddo*, No. 3:18-cr-08341-JJT (D. Ariz. Mar. 23, 2020).

As of May 1, 2020, 70% of all inmates the BOP had tested for COVID-19 were positive.1 At that time, only 2,700 of the 146,000 BOP inmates in the country had been tested, indicating that the numbers of inmates with COVID-19 was much higher than what had been reported. *Id.* The BOP has now administered around 24,000 tests, and the results continue to rise, reflecting a much higher infection rate in the BOP than in the general population, which can be observed in the following illustrations:

BOP-Reported COVID-19 Test Results Nationwide2

---

1 "70% of inmates tested have COVID-19: Bureau of Prisons" ABC News (May 1, 2020) at https://abcnews.go.com/US/70-inmates-tested-covid-19-bureau-prisons/story?id=70454527.
2 Numbers obtained from www.bop.gov/coronavirus on a daily basis. There is good reason to believe that the numbers reported by the BOP understate the actual number of tested-positive cases. *Compare* M. Licon-Vitale, MCC Ward, and D. Edge, MDC Warden, *Response to EDNY Administrative Order 2020-14* (Apr. 7, 2020) *at* https://www.nyed.uscourts.gov/pub/bop/MDC_20200407_042057.pdf (3 positive inmates at MDC Brooklyn) *with COVID-19 Cases* Federal Bureau of Prisons (Apr. 7, 2020) *at* www.bop.gov/coronavirus (2 positive inmates at MDC Brooklyn).

4

| Date | Number of Positive Inmates | Number of Recovered Inmates | Number of Inmate Deaths | Number of Positive Staff | Number of Recovered Staff | Number of Staff Deaths | Total BOP Cases |
|---|---|---|---|---|---|---|---|
| 3/20/2020 | 0 | | 0 | 2 | | 0 | 2 |
| 3/21/2020 | 1 | | 0 | 2 | | 0 | 3 |
| 3/22/2020 | 1 | | 0 | 2 | | 0 | 3 |
| 3/23/2020 | 3 | | 0 | 3 | | 0 | 6 |
| 3/24/2020 | 6 | | 0 | 3 | | 0 | 9 |
| 3/25/2020 | 6 | | 0 | 3 | | 0 | 9 |
| 3/26/2020 | 10 | | 0 | 8 | | 0 | 18 |
| 3/27/2020 | 14 | | 0 | 13 | | 0 | 27 |
| 3/28/2020 | 19 | | 1 | 19 | | 0 | 39 |
| 3/29/2020 | 19 | | 1 | 19 | | 0 | 39 |
| 3/30/2020 | 28 | | 1 | 24 | | 0 | 53 |
| 3/31/2020 | 29 | | 1 | 30 | | 0 | 60 |
| 4/1/2020 | 57 | | 3 | 37 | | 0 | 97 |
| 4/2/2020 | 75 | | 6 | 39 | | 0 | 120 |
| 4/3/2020 | 91 | | 7 | 50 | | 0 | 148 |
| 4/4/2020 | 120 | | 8 | 54 | | 0 | 182 |
| 4/5/2020 | 138 | | 8 | 59 | | 0 | 205 |
| 4/6/2020 | 196 | | 8 | 63 | | 0 | 267 |
| 4/7/2020 | 241 | | 8 | 72 | | 0 | 321 |
| 4/8/2020 | 272 | | 8 | 105 | | 0 | 385 |
| 4/9/2020 | 283 | 14 | 8 | 125 | 7 | 0 | 437 |
| 4/10/2020 | 318 | 15 | 9 | 163 | 8 | 0 | 513 |
| 4/11/2020 | 335 | 15 | 9 | 185 | 12 | 0 | 556 |
| 4/12/2020 | 352 | 19 | 10 | 189 | 12 | 0 | 582 |
| 4/13/2020 | 388 | 19 | 13 | 201 | 12 | 0 | 633 |
| 4/14/2020 | 446 | 20 | 14 | 248 | 13 | 0 | 741 |
| 4/15/2020 | 451 | 49 | 16 | 280 | 18 | 0 | 814 |
| 4/16/2020 | 473 | 64 | 18 | 279 | 23 | 0 | 857 |
| 4/17/2020 | 465 | 113 | 18 | 296 | 25 | 0 | 917 |

| Date | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4/18/2020 | 479 | 145 | 21 | 305 | 26 | 0 | 976 |
| 4/19/2020 | 495 | 155 | 22 | 309 | 29 | 0 | 1010 |
| 4/20/2020 | 497 | 205 | 22 | 319 | 33 | 0 | 1076 |
| 4/21/2020 | 540 | 220 | 23 | 323 | 49 | 0 | 1155 |
| 4/22/2020 | 566 | 248 | 24 | 342 | 52 | 0 | 1232 |
| 4/23/2020 | 620 | 302 | 24 | 357 | 53 | 0 | 1356 |
| 4/24/2020 | 649 | 380 | 25 | 336 | 98 | 0 | 1488 |
| 4/25/2020 | 730 | 383 | 26 | 317 | 124 | 0 | 1580 |
| 4/26/2020 | 799 | 385 | 27 | 319 | 124 | 0 | 1654 |
| 4/27/2020 | 1046 | 390 | 28 | 330 | 124 | 0 | 1918 |
| 4/28/2020 | 1314 | 404 | 30 | 335 | 132 | 0 | 2215 |
| 4/29/2020 | 1534 | 414 | 31 | 343 | 132 | 0 | 2454 |
| 4/30/2020 | 1692 | 426 | 33 | 349 | 132 | 0 | 2632 |
| 5/1/2020 | 1842 | 509 | 36 | 343 | 146 | 0 | 2876 |
| 5/2/2020 | 1919 | 515 | 37 | 349 | 147 | 0 | 2967 |
| 5/3/2020 | 1926 | 515 | 38 | 350 | 148 | 0 | 2977 |
| 5/4/2020 | 1984 | 543 | 40 | 356 | 149 | 0 | 3072 |
| 5/5/2020 | 2066 | 561 | 41 | 359 | 149 | 0 | 3176 |
| 5/6/2020 | 2100 | 559 | 42 | 365 | 149 | 0 | 3215 |
| 5/7/2020 | 2646 | 591 | 44 | 244 | 278 | 0 | 3803 |
| 5/8/2020 | 3082 | 619 | 45 | 248 | 279 | 0 | 4273 |
| 5/9/2020 | 3330 | 624 | 46 | 250 | 279 | 0 | 4529 |
| 5/10/2020 | 3319 | 656 | 48 | 250 | 279 | 0 | 4552 |
| 5/11/2020 | 3379 | 656 | 49 | 250 | 279 | 0 | 4613 |
| 5/12/2020 | 2817 | 1288 | 50 | 279 | 279 | 0 | 4713 |
| 5/13/2020 | 2820 | 1353 | 51 | 266 | 282 | 0 | 4772 |
| 5/14/2020 | 2322 | 1809 | 52 | 272 | 284 | 0 | 4739 |
| 5/15/2020 | 2296 | 1874 | 55 | 275 | 287 | 0 | 4787 |
| 5/16/2020 | 2280 | 1950 | 56 | 283 | 287 | 0 | 4856 |
| 5/17/2020 | 2319 | 1955 | 56 | 284 | 287 | 0 | 4901 |
| 5/18/2020 | 2338 | 1971 | 57 | 196 | 375 | 0 | 4937 |
| 5/19/2020 | 2298 | 2109 | 57 | 198 | 375 | 0 | 5037 |
| 5/20/2020 | 2267 | 2177 | 58 | 188 | 389 | 0 | 5079 |

| Date | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5/21/2020 | 1735 | 2767 | 59 | 191 | 392 | 0 | 5144 |
| 5/22/2020 | 1594 | 3047 | 59 | 194 | 394 | 0 | 5288 |
| 5/23/2020 | 1603 | 3057 | 59 | 194 | 395 | 0 | 5308 |
| 5/24/2020 | 1558 | 3144 | 59 | 186 | 403 | 0 | 5350 |
| 5/25/2020 | 1556 | 3144 | 59 | 175 | 414 | 0 | 5348 |
| 5/26/2020 | 1577 | 3180 | 64 | 181 | 413 | 0 | 5415 |
| 5/27/2020 | 1747 | 3232 | 64 | 187 | 413 | 0 | 5643 |
| 5/28/2020 | 1693 | 3318 | 64 | 187 | 417 | 0 | 5679 |
| 5/29/2020 | 1610 | 3547 | 66 | 189 | 420 | 0 | 5832 |
| 5/30/2020 | 1649 | 3582 | 66 | 192 | 420 | 0 | 5909 |
| 5/31/2020 | 1629 | 3605 | 67 | 177 | 435 | 0 | 5913 |
| 6/1/2020 | 1650 | 3613 | 68 | 171 | 445 | 0 | 5947 |
| 6/2/2020 | 1904 | 3631 | 71 | 175 | 448 | 0 | 6229 |
| 6/3/2020 | 1956 | 3689 | 72 | 176 | 450 | 0 | 6343 |
| 6/4/2020 | 1993 | 3681 | 75 | 179 | 451 | 1 | 6380 |
| 6/5/2020 | 1981 | 3785 | 77 | 181 | 452 | 1 | 6477 |
| 6/6/2020 | 1957 | 3868 | 78 | 183 | 452 | 1 | 6539 |
| 6/7/2020 | 1999 | 3936 | 78 | 185 | 452 | 1 | 6649 |
| 6/8/2020 | 2068 | 3957 | 78 | 185 | 452 | 1 | 6741 |
| 6/9/2020 | 2125 | 3975 | 78 | 190 | 453 | 1 | 6822 |
| 6/10/2020 | 2134 | 3972 | 79 | 190 | 456 | 1 | 6832 |
| 6/11/2020 | 2024 | 4080 | 80 | 191 | 457 | 1 | 6833 |
| 6/12/2020 | 1622 | 4503 | 80 | 196 | 457 | 1 | 6859 |
| 6/13/2020 | 1374 | 4775 | 82 | 185 | 472 | 1 | 6889 |
| 6/14/2020 | 1324 | 4817 | 84 | 160 | 497 | 1 | 6883 |
| 6/15/2020 | 1220 | 4918 | 85 | 168 | 498 | 1 | 6890 |
| 6/16/2020 | 1209 | 4940 | 85 | 168 | 502 | 1 | 6905 |
| 6/17/2020 | 1190 | 4970 | 85 | 170 | 502 | 1 | 6918 |
| 6/18/2020 | 1266 | 4960 | 85 | 171 | 503 | 1 | 6986 |
| 6/19/2020 | 1318 | 4955 | 85 | 164 | 516 | 1 | 7039 |
| 6/20/2020 | 1327 | 4953 | 86 | 166 | 516 | 1 | 7049 |
| 6/21/2020 | 1351 | 4953 | 86 | 169 | 516 | 1 | 7076 |
| 6/22/2020 | 1346 | 4955 | 87 | 172 | 516 | 1 | 7077 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 6/23/2020 | 1349 | 4975 | 87 | 163 | 528 | 1 | 7103 |
| 6/24/2020 | 1260 | 5080 | 88 | 141 | 555 | 1 | 7125 |
| 6/25/2020 | 1249 | 5115 | 89 | 133 | 571 | 1 | 7158 |
| 6/26/2020 | 1263 | 5116 | 89 | 133 | 574 | 1 | 7176 |
| 6/27/2020 | 1386 | 5115 | 89 | 136 | 574 | 1 | 7301 |
| 6/28/2020 | 1422 | 5114 | 89 | 137 | 574 | 1 | 7337 |
| 6/29/2020 | 1442 | 5116 | 89 | 143 | 574 | 1 | 7365 |
| 6/30/2020 | 1513 | 5113 | 90 | 152 | 575 | 1 | 7444 |
| 7/01/2020 | 1563 | 5135 | 90 | 164 | 579 | 1 | 7532 |
| 7/02/2020 | 1634 | 5138 | 91 | 170 | 584 | 1 | 7618 |
| 7/03/2020 | 1813 | 5131 | 92 | 177 | 584 | 1 | 7798 |
| 7/04/2020 | 1888 | 5134 | 93 | 177 | 584 | 1 | 7877 |
| 7/05/2020 | 1932 | 5137 | 94 | 177 | 584 | 1 | 7925 |
| 7/06/2020 | 1992 | 5137 | 94 | 160 | 603 | 1 | 7987 |
| 7/07/2020 | 2163 | 5147 | 94 | 190 | 603 | 1 | 8189 |
| 7/08/2020 | 2267 | 5128 | 94 | 211 | 603 | 1 | 8304 |
| 7/09/2020 | 2459 | 5137 | 94 | 236 | 603 | 1 | 8530 |
| 7/10/2020 | 2666 | 5137 | 94 | 248 | 603 | 1 | 8749 |
| 7/11/2020 | 2860 | 5137 | 94 | 242 | 615 | 1 | 8949 |
| 7/12/2020 | 2983 | 5140 | 94 | 242 | 615 | 1 | 9075 |
| 7/13/2020 | 3112 | 5141 | 95 | 259 | 615 | 1 | 9223 |



COVID-19 Rate of Infection for Various Populations

| Location | Cases | Population | Infections/ 1,000 People | Infection Rate as Percent of Population |
|---|---|---|---|---|
| **BOP Imprisoned Population** | 8,2153 | 143,6564 | 57.19 | 5.7185% |

---

3 Includes the number of BOP inmates who have tested positive for COVID-19, the number of BOP inmates who have recovered, and the number of BOP inmates who have died from COVID-19. Numbers obtained from www.bop.gov/coronavirus on a daily basis. There is good reason to believe that the numbers reported by the BOP understate the actual number of tested-positive cases. *Compare* M. Licon-Vitale, MCC Ward, and D. Edge, MDC Warden, *Response to EDNY Administrative Order 2020-14* (Apr. 7, 2020) *at* https://www.nyed.uscourts.gov/pub/bop/MDC_20200407_042057.pdf (3 positive inmates at MDC Brooklyn) *with COVID-19 Cases* Federal Bureau of Prisons (Apr. 7, 2020) *at* www.bop.gov/coronavirus (2 positive inmates at MDC Brooklyn).

4 Includes the number of federal inmates in BOP-managed institutions, the number of federal inmates in community-based facilities, and the number of federal inmates who have died from COVID-19. Numbers obtained from www.bop.gov/coronavirus on a daily basis.

| | | | | |
|---|---|---|---|---|
| United States | 3,341,838 | 329,947,014[5] | 10.13 | 1.0128% |
| China | 85,1176 | 1,394,015,9777 | 0.06 | 0.0061% |
| Italy | 243,2308 | 62,402,6599 | 3.90 | 0.3898% |

| | BOP has an infection rate X times higher |
|---|---|
| Compared to the United States | 5.65 |
| Compared to China | 936.56 |
| Compared to Italy | 14.67 |

Rate of Rise of Reported COVID-19 Cases in Bureau of Prisons[10] and the United States[11], Every 3 Days

| Date | Number of BOP Cases | BOP Rate of Rise | Cumulative BOP Rate of Rise Since 3/20/2020 | Number of National Cases | U.S. Rate of Rise | Cumulative U.S. Rate of Rise Since 3/20/2020 |
|---|---|---|---|---|---|---|
| 3/20/2020 | 2 | 0.00% | 0.00% | 18,747 | 0.00% | 0.00% |
| 3/23/2020 | 6 | 200.00% | 200.00% | 44,183 | 135.68% | 135.68% |
| 3/26/2020 | 18 | 200.00% | 400.00% | 85,356 | 93.19% | 228.87% |
| 3/29/2020 | 39 | 116.67% | 516.67% | 140904 | 65.08% | 293.95% |
| 4/1/2020 | 97 | 148.72% | 665.38% | 213144 | 51.27% | 345.21% |
| 4/4/2020 | 182 | 87.63% | 753.01% | 304826 | 43.01% | 388.23% |

---

5  Numbers obtained on 7/13/2020 at 4:10pm from https://coronavirus.jhu.edu/map.html
6  Numbers obtained on 7/13/2020 at 4:10pm from https://coronavirus.jhu.edu/map.html
7  Numbers obtained on 7/13/2020 at 4:11pm from https://www.census.gov/popclock/
8  Numbers obtained on 7/13/2020 at 4:10pm from https://coronavirus.jhu.edu/map.html
9  Numbers obtained on 7/13/2020 at 4:11pm from https://www.census.gov/popclock/
10  Numbers obtained from www.bop.gov/coronavirus on a daily basis. There is good reason to believe that the numbers reported by the BOP understate the actual number of tested-positive cases. *Compare* M. Licon-Vitale, MCC Ward, and D. Edge, MDC Warden, *Response to EDNY Administrative Order 2020-14* (Apr. 7, 2020) *at* https://www.nyed.uscourts.gov/pub/bop/MDC_20200407_042057.pdf (3 positive inmates at MDC Brooklyn) *with COVID-19 Cases* Federal Bureau of Prisons (Apr. 7, 2020) *at* www.bop.gov/coronavirus (2 positive inmates at MDC Brooklyn).
11  Numbers obtained from https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html

| | | | | | | |
|---|---|---|---|---|---|---|
| 4/7/2020 | 321 | 76.37% | 829.39% | 395011 | 29.59% | 417.81% |
| 4/10/2020 | 513 | 59.81% | 889.20% | 492,416 | 24.66% | 442.47% |
| 4/13/2020 | 633 | 23.39% | 912.59% | 579,005 | 17.58% | 460.06% |
| 4/16/2020 | 857 | 35.39% | 947.98% | 661,712 | 14.28% | 474.34% |
| 4/19/2020 | 1,010 | 17.85% | 965.83% | 746,625 | 12.83% | 487.17% |
| 4/22/2020 | 1,232 | 21.98% | 987.81% | 828,441 | 10.96% | 498.13% |
| 4/25/2020 | 1,580 | 28.25% | 1016.06% | 928,619 | 12.09% | 510.23% |
| 4/28/2020 | 2,215 | 40.19% | 1056.25% | 981,246 | 5.67% | 515.89% |
| 5/1/2020 | 2,876 | 29.84% | 1086.09% | 1,062,446 | 8.28% | 524.17% |
| 5/4/2020 | 3,072 | 6.82% | 1092.91% | 1,152,372 | 8.46% | 532.63% |
| 5/7/2020 | 3,803 | 23.80% | 1116.70% | 1,219,066 | 5.79% | 538.42% |
| 5/10/2020 | 4,552 | 19.69% | 1136.40% | 1,300,696 | 6.70% | 545.12% |
| 5/13/2020 | 4,772 | 4.83% | 1141.23% | 1,364,061 | 4.87% | 549.99% |
| 5/16/2020 | 4,856 | 1.76% | 1142.99% | 1,446,196 | 6.02% | 556.01% |
| 5/19/2020 | 5,037 | 3.73% | 1146.72% | 1,504,830 | 4.05% | 560.06% |
| 5/22/2020 | 5,288 | 4.98% | 1151.70% | 1,571,617 | 4.44% | 564.50% |
| 5/25/2020 | 5,348 | 1.13% | 1152.83% | 1,637,456 | 4.19% | 568.69% |
| 5/28/2020 | 5,679 | 6.19% | 1159.02% | 1,698,523 | 3.73% | 572.42% |
| 5/31/2020 | 5,913 | 4.12% | 1163.14% | 1,761,503 | 3.71% | 576.13% |
| 6/3/2020 | 6,343 | 7.27% | 1170.42% | 1,827,425 | 3.74% | 579.87% |
| 6/6/2020 | 6,539 | 3.09% | 1173.51% | 1,891,690 | 3.52% | 583.39% |
| 6/9/2020 | 6,822 | 4.33% | 1177.83% | 1,971,302 | 4.21% | 587.59% |
| 6/12/2020 | 6,859 | 0.54% | 1178.38% | 2,036,429 | 3.30% | 590.90% |
| 6/15/2020 | 6,890 | 0.45% | 1178.83% | 2,105,482 | 3.39% | 594.29% |
| 6/18/2020 | 6986 | 1.39% | 1180.22% | 2,177,842 | 3.44% | 597.73% |
| 6/21/2020 | 7076 | 1.29% | 1181.51% | 2,292,867 | 5.28% | 603.01% |
| 6/24/2020 | 7125 | 0.69% | 1182.20% | 2,364,874 | 3.14% | 606.15% |
| 6/27/2020 | 7301 | 2.47% | 1184.67% | 2,462,492 | 4.13% | 610.28% |
| 6/30/2020 | 7444 | 1.96% | 1186.63 | 2,623,217 | 6.53% | 616.80% |
| 7/3/2020 | 7798 | 4.76% | 1191.39% | 2,724,640 | 3.87% | 620.67% |
| 7/6/2020 | 7987 | 2.42% | 1193.81% | 2,911,888 | 6.87% | 627.54% |
| 7/9/2020 | 8530 | 6.80% | 1200.61% | 3,084,690 | 5.93% | 633.48% |
| 7/12/2020 | 9075 | 6.39% | 1200.61% | 3,286,025 | 6.53% | 640.00% |



Mr. Carpenter is 46 years old. He suffers serious medical conditions that place him in that group: hypertension, diabetes, obesity, and hyperlipidemia. (Exhibit 3 – Medical records filed under seal). The CDC and other medical authorities have made clear that COVID-19 is especially dangerous for both older people and people with severe chronic medical conditions. *See* https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-risk-complications/older-adults.html. Eight out ten deaths reported in the United States have been in older adults. *Id.* Those with certain serious health concerns—including chronic lung disease, moderate to severe asthma, compromised immune systems*,* diabetes, severe obesity, renal failure, and liver disease—are also especially vulnerable to and at higher risk for serious complications from COVID-19, including death. *See* https://www.cdc.gov/coronavirus/2019-ncov/hcp/underlying-conditions.html. Mr. Carpenter's obesity, diabetes and hypertension places him in the group of people with severe chronic medical conditions. He is among those with the highest risk of death or serious illness from COVID-19. Yet, as a Bureau of Prisons inmate, it is impossible for Mr. Carpenter to follow

the CDC's recommendations to protect himself from exposure to this highly-transmissible disease. This risk of serious illness or death from the unprecedented global pandemic, together with all of the other relevant factors in this case, presents an extraordinary and compelling basis for sentence reduction in Mr. Carpenter's case.

Mr. Carpenter is at FCI Edgefield which has 1 inmate and 23 staff members currently positive for COVID-19. There have been 3 inmate deaths at this facility.

V.     **Precedent**

Multiple courts have found that the threat of COVID-19 presents "extraordinary and compelling reasons" for compassionate release. *See United States*, No. CR ELH-18-72, 2020 WL 2614816, at *7 (D. Md. May 22, 2020) ("[J]ust last week, the Department of Justice adopted the position that any inmate who suffers from the chronic conditions associated with severe illness from COVID-19 are eligible for compassionate release."); *United States v. Atkinson*, 2020 WL 1904585, at *3 (D. Nev. Apr. 17, 2020) ("The presence of COVID-19 . . . necessitates a more expansive interpretation of what self-care means" to include COVID-19 vulnerability coupled with the inability to practice CDC-recommended procedures to safeguard against transmission); *U.S. v. Esparza*, 2020 WL 1696084, at * (D. Idaho Apr. 7, 2020) (same); *see also* Government's Response in Opposition to Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), *United States v. Hird*, Case No. 2:13-cr-39-TJS, Dkt. No. 650 (E.D. Pa. May 19, 2020) (government concession that "the risk of COVID-19" to a vulnerable inmate "presents 'a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility'"); *United States v. Copeland*, No. 2:05-cr-135-DCN (D.S.C. Mar. 24, 2020) (granting First Step Act release to defendant in part due to "Congress's desire for courts to release individuals the age defendant is, with the ailments that defendant has during this current pandemic"); *United States v. Jaffee*, No. 19-cr-88 (D.D.C.

Mar. 26, 2020) (releasing defendant with criminal history in gun & drug case, citing "palpable" risk of spread in jail and "real" risk of "overburdening the jail's healthcare resources"; "the Court is . . . convinced that incarcerating the defendant while the current COVID-19 crisis continues to expand poses a greater risk to community safety than posed by Defendant's release to home confinement"); *United States v. Harris*, No. 19-cr-356 (D.D.C. Mar. 26, 2020) ("The Court is convinced that incarcerating Defendant while the current COVID-19 crisis continues to expand poses a far greater risk to community safety than the risk posed by Defendant's release to home confinement on . . . strict conditions."); *United States v. Perez*, No. 19 CR. 297 (PAE), 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (releasing defendant due to the "heightened risk of dangerous complications should he contract COVID-19"); *United States v. Stephens*, 2020 WL 1295155, __ F. Supp. 3d __ (S.D.N.Y. Mar. 19, 2020) (releasing defendant in light of "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic"); *United States v. Perez*, No. 1:17-cr-513-AT, Dkt. No. 98 (S.D.N.Y. Apr. 1, 2020) (granting compassionate release where "[t]he benefits of keeping [Perez] in prison for the remainder of his sentence are minimal, and the potential consequences of doing so are extraordinarily grave"); *United States v. Rodriguez*, No. 2:03-cr-271-AB, Dkt. No. 135 (E.D. Pa. Apr. 1, 2020) (granting release after finding risk factors for COVID-19 constitute extraordinary and compelling reason and noting that prisons are "tinderboxes for infectious disease"); *United States v. Williams*, No. 3:04-cr-95-MCR-CJK, Dkt. No. 91 (Apr. 1, 2020) (compassionate release in light of severe risk posed to defendant by COVID-19); *United States v. Campagna*, 2020 WL 1489829 (S.D.N.Y. Mar. 27, 2020) (compassionate release grant).

As a result of these recent COVID-19 facts, courts have found that inmates who have tested positive for COVID-19 and who have recovered are eligible for compassionate release, as contracting the virus once does not mean an inmate is immune and the facilities in which they

14

reside have proven that they are unable to protect inmates from the virus. *See United States v. Barajas,* No. 18-CR-736-4 (NSR), 2020 WL 3638584 (S.D.N.Y. July 6, 2020); *United States v. Jacobs*, No. 4:19-CR-00149, 2020 WL 3637625 (S.D. Iowa July 2, 2020); *United States v. Chargualaf,* No. CR 95-00054, 2020 WL 3619007 (D. Guam July 2, 2020); *United States v. Rachal.,* No. CR 16-10043-NMG, 2020 WL 3545473 (D. Mass. June 30, 2020); *United States v. Heyward,* No. 17-CR-527-PWG, 2020 WL 3547018 (D. Md. June 30, 2020); *United States v. Yellin,* No. 3:15-CR-3181-BTM-1, 2020 WL 3488738 (S.D. Cal. June 26, 2020); *United States, v. Kess,* No. CR ELH-14-480, 2020 WL 3268093 (D. Md. June 17, 2020); *United States v. Williams,* No. 19-CR-134-PWG, 2020 WL 3073320 (D. Md. June 10, 2020); *United States v. Snell,* No. CR 16-20222-6, 2020 WL 2850038 (E.D. Mich. June 2, 2020); *United States v. Barber*, 6:18-cr-00446-AA, Dkt. No. 55 (D. Or. May 12, 2020); *United States v. Huntley*, 1:13-cr-0119-ABJ-1, Dkt. No. 263 (D. D.C. May 5, 2020); *United States v. Fischman*, 4:16-cr-00246-HSG-1, 2020 WL 2097615 (N.D. Cal. May 1, 2020); *United States v. Johnson*, 1:17-cr-00482-JSR-1, Dkt. No. 116 (S.D. N.Y. May 1, 2020) (Rakoff, J.).

The sum of Mr. Carpenter's conditions creates "extraordinary and compelling reasons" for his release.

## VI. A Sentence Reduction is Consistent with Consideration of the 18 U.S.C. § 3553(a) Factors

When extraordinary and compelling reasons are established, the Court must consider the relevant sentencing factors in § 3553(a) to determine whether a sentence reduction is warranted. 18 U.S.C. § 3582(c)(1)(A)(i). Under all of the circumstances in this case, the Court should conclude that the time that Mr. Carpenter has already served is sufficient to satisfy the purposes of sentencing. Under *Pepper v. United States*, 562 U.S. 476, 490-93 (2011), the Court can, and indeed must, consider post-offense developments under § 3553(a).

Moreover, the circumstances facing the Court today with the COVID-19 crisis provide justification to act decisively. Although Mr. Carpenter's crime certainly deserved punishment, it does not rise to the level of a crime that would merit a death sentence. Leaving Mr. Carpenter in FCI Edgefield would put him at great danger of a painful and inhumane death. But given the fact that COVID-19 is exponentially rising in prisons all over the country, transferring him to another facility does not protect him or others from that fate.

In sum, the totality of the circumstances demonstrates that reducing Mr. Carpenter's sentence to time served or releasing him to serve the balance of his sentence on home confinement is "sufficient, but not greater than necessary," to serve the purposes of sentencing under § 3553(a). Should the Court deem it necessary, the Court may substitute the incarceration time for additional supervised release. Mr. Carpenter should be allowed to recover from home, self-quarantining there rather than remaining at the Bureau of Prisons subject to contracting the disease again once he has fully recovered. Upon his release, he plans to live with his wife in Whitesburg, Tennessee. Here, he will have emotional and financial support, along with access to medical care that is necessary to treat his medical conditions. With his medical conditions, his desire to be with his family, and his family's desire to be with him, Mr. Carpenter poses little to no risk of reoffending.

**VII. Conclusion**

The threat of COVID-19 is very real in Edgefield, South Carolina. Mr. Carpenter is statutorily eligible for release, and does not present a danger to society. Thus, it is appropriate for this Court to grant a reduction in his sentence to time served.

RESPECTFULLY SUBMITTED:

FEDERAL DEFENDER SERVICES OF
EASTERN TENNESSEE, INC.

BY: s/ *Nikki C. Pierce*
Nikki C. Pierce
BPR No. 018181
Federal Defender Services
219 West Depot Street, Suite 2
Greeneville, TN   37743
(423) 636-1301