UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>     Plaintiff,<br><br>v.<br><br>CURTIS CARPENTER,<br>     Defendant. | No. 2:17-cr-66-06<br><br>Judge Jordan |

**RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION FOR COMPASSIONATE RELEASE**

Carpenter seeks immediate release from custody due to the COVID-19 pandemic and his medical conditions. (Doc. 590, Motion.) The United States responds within the time period set by E.D. Tenn. Standing Order 19-04, *available at* https://www.tned.uscourts.gov/sites/tned/files/SO-19-04_first_step.pdf (accessed Mar. 15, 2021).

The Court has authority to consider the motion, because Carpenter has satisfied the exhaustion requirement by requesting compassionate release from the warden of his facility in July 2020, *i.e.*, more than 30 days before filing his motion. (Exhibit 1, Request & Denial.[1]) But Carpenter has not shown that his immediate release would be consistent with 18 U.S.C. §§ 3553(a) and 3582(c)(1)(A), so his motion should be denied.

**Factual Background**

**I. Facts regarding Carpenter's conviction and sentence**

Carpenter pleaded guilty to conspiring to distribute 50 grams of methamphetamine, for which he was sentenced, below the applicable guidelines range, to 172 months' imprisonment.

---

[1] Carpenter's purported proof of exhaustion actually shows that he requested a transfer to home confinement as early as April 2020, but home confinement under the CARES Act involves a different standard than compassionate release under 18 U.S.C. § 3582(c)(1)(A). (*See* Doc. 590, Motion at 3; Doc. 590-1, Request & Denial.)

(Doc. 487, Judgment.) He is expected to complete that sentence in September 2029 and is housed at FCI Edgefield, where one inmate and 23 staff members have active COVID-19 cases, another 227 individuals who previously tested positive have already recovered, and three inmates have died. *See* Inmate Locator, Federal Bureau of Prisons, *available at* https://www.bop.gov/inmateloc/ (accessed Mar. 17, 2021); COVID-19 Cases, Federal Bureau of Prisons, *available at* https://www.bop.gov/coronavirus/ (accessed Mar. 17, 2021).

II.     **Facts regarding the COVID-19 pandemic and the Bureau of Prisons' response to it**

COVID-19 has unquestionably infected many people and caused many deaths. The United States has had over 29.3 million confirmed and presumed positive cases of COVID-19, and more than 534,000 people have died as a result of the virus. COVID-19: U.S. at a Glance, Centers for Disease Control and Prevention, *available at* https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (accessed Mar. 17, 2021).

In response to the pandemic, the Bureau of Prisons (BOP) has taken significant measures to protect the health of the inmates in its charge: "maintaining [the] safety and security of [its] institutions is [its] highest priority." Updates to BOP COVID-19 Action Plan, Federal Bureau of Prisons, *available at* https://www.bop.gov/resources/news/20200319_covid19_update.jsp (accessed Mar. 15, 2021). For example, BOP has had a pandemic influenza plan in place since 2012. *See* Pandemic Influenza Plan-Module 1: Surveillance and Infection Control, BOP Health Services Division, *available at* https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf (accessed Mar. 15, 2021). That plan establishes a six-phase framework requiring BOP facilities to begin preparations upon any "[s]uspected human outbreak overseas." *Id*. at i. Consistent with that plan, BOP began planning for the coronavirus in January 2020 and, among other things, began developing policies in consultation with experts in the Centers for Disease Control.

2

On March 13, 2020, BOP began to modify its operations, in accordance with its Coronavirus Action Plan, to minimize the risk of COVID-19 transmission into and within its facilities. Since then, as events require and in response to expert guidance, BOP has repeatedly revised its Action Plan to address the ongoing public-health crisis. BOP Implementing Modified Operations, Federal Bureau of Prisons, *available at* https://www.bop.gov/coronavirus/covid19_status.jsp (updated Nov. 25, 2020; accessed Mar. 1, 2021). That plan currently includes (1) limiting group gatherings and maximizing social distancing to the extent possible; (2) limiting internal inmate movement; (3) screening all new arrivals, quarantining at-risk asymptomatic inmates, and isolating and testing symptomatic inmates; (4) imposing preventive protocols (*e.g.*, screening, masks, social distancing, frequent disinfection of high-touch surfaces, physical barriers) for social visits; and (5) conducting enhanced health screening for staff. *Id*. Those measures help safeguard inmates against COVID-19 while providing needed medical care.

The Bureau of Prisons is also offering the COVID-19 vaccine to its inmate population, especially those with risk factors recognized by the CDC. Update on COVID-19 Vaccinations, Federal Bureau of Prisons, *available at* https://www.bop.gov/resources/news/pdfs/20210115_press_release_vaccination.pdf (accessed Mar. 15, 2021); *see also* COVID-19 Vaccine Guidance, Federal Bureau of Prisons, *available at* https://www.bop.gov/resources/pdfs/2021_covid19_vaccine.pdf (accessed Mar. 15, 2021). The Bureau of Prisons has already administered over 83,000 doses of the vaccine. COVID-19 Vaccine Implementation, Federal Bureau of Prisons, *available at* https://www.bop.gov/coronavirus/ (accessed Mar. 17, 2021). So far, 74 inmates at Carpenter's facility have already been fully inoculated. *Id*.

In addition, BOP is transferring more inmates to home confinement. In March 2020, the Attorney General directed the Director of the Bureau of Prisons to prioritize the use of statutory

authority to place prisoners in home confinement. That authority previously authorized placement in home confinement for the last six months or ten percent of a sentence, whichever is shorter, 18 U.S.C. § 3624(c)(2), and for those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g). But then Congress authorized BOP to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" under § 3624(c)(2), so long as "the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons]." Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (Mar. 27, 2020). Since the Attorney General made the requisite findings on April 3, 2020, the Bureau of Prisons has been reviewing its population to assess each inmate's vulnerability to COVID-19, whether home confinement would increase that inmate's risk of contracting COVID-19, and whether release to home confinement would risk public safety. Home Confinement, Federal Bureau of Prisons, *available at* https://www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp (accessed Mar. 15, 2021). Since March 26, 2020, the Bureau of Prisons has transferred 22,940 inmates to home confinement. *See* COVID-19 Home Confinement Releases, Federal Bureau of Prisons, *available at* https://www.bop.gov/coronavirus/ (accessed Mar. 17, 2021). The Bureau of Prisons has declined to transfer Carpenter to home confinement. (Exhibit 2, Inmate Profile; *see also* Doc. 590-1, Request & Denial.)

Taken together, these measures are designed to mitigate sharply the risks of COVID-19 in a BOP institution. BOP has pledged to continue monitoring the pandemic and to adjust its practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

4

**Legal Framework**

A district court has "no inherent authority . . . to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). And "once [it] has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013); *accord Dillon v. United States*, 560 U.S. 817, 825 (2010). One statute that authorizes sentence modifications is 18 U.S.C. § 3582(c)(1)(A), which allows this Court, in certain circumstances, to grant a defendant's motion to reduce his term of imprisonment. Before filing the motion, the defendant must request that the Bureau of Prisons file such a motion on his behalf, then "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or wait 30 days "from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A).

Once the threshold exhaustion requirement is satisfied, three substantive requirements must also be satisfied. *See United States v. Ruffin*, 978 F.3d 1000, 1004-1005 (6th Cir. 2020). First, the Court must find that "extraordinary and compelling reasons warrant such a reduction."[2] *Id.* at 1004. Second, the court must find "that such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission." *Id.* at 1005 (emphasis added). Third, "the court may not grant the reduction before 'considering the factors set forth in section 3553(a) to the extent that they are applicable.'" *Id*. "[C]ourts may deny compassionate-release motions

---

[2] Alternatively, a defendant may be eligible for relief if he "is at least 70 years of age, has served at least 30 years in prison . . . for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)." 18 U.S.C. § 3582(c)(1)(A)(ii). But Carpenter cannot satisfy that standard, as he is too young and has served too little time in custody.

when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

The Sentencing Commission's only policy statement regarding compassionate release is found at U.S.S.G. § 1B1.13. That statement provides that a court may reduce a custodial sentence if it finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13. The policy statement includes an application note that identifies various medical conditions that are "extraordinary and compelling reasons," *e.g.*, a terminal illness or a "serious physical or mental condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A). The application note also identifies other conditions and characteristics as "extraordinary and compelling reasons" based on the defendant's age or family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C). Lastly, the note recognizes the possibility that the Bureau of Prisons could identify other grounds that amount to "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, cmt. n.1(D); *see also* Program Statement 5050.50, Federal Bureau of Prisons, *available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdf (accessed Mar. 15, 2021) (generally paralleling § 1B1.13's categories).

The Sixth Circuit has held that "§ 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions." *Elias*, 984 F.3d at 519; *accord United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020); *see also United States v. Sherwood*, 986 F.3d 951, 953-54 (6th Cir. 2021) (reiterating that "satisfying the § 1B1.13 policy statement is no longer

6

a requirement for defendant-filed compassionate release motions," and, by extension, that "the policy statement's requirement that the defendant not be a danger to the community no longer provides an independent basis for denying compassionate release."). Yet § 1B1.13 remains "relevant, even if no longer binding." *United States v. Tomes*, No. 20-6056, __ F.3d __, 2021 WL7 868555, at *2 n.1 (6th Cir. Mar. 9, 2021). Stated another way, § 1B1.13 provides a useful "working definition" that can "guide discretion without being conclusive." *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020); *accord United States v. Watts*, No. 6:14-004-DCR, 2020 WL 6937442, at *2 (E.D. Ky. Nov. 24, 2020) (although courts are not bound by U.S.S.G. §1B1.13 after *Jones*, "the policy statements provide a framework for evaluating a defendant's asserted justifications for a sentence reduction"). Indeed, the Sixth Circuit has found no error where a district court "treated the policy statement as 'helpful guidance.'" *United States v. Carr*, No. 20-5784, 2020 U.S. App. LEXIS 33773, at *4 (6th Cir. Oct. 26, 2020) (order).

Under any reading of § 3582(c)(1)(A), the "extraordinary and compelling reasons" requirement is not meaningless. A defendant's proffered reason must be "extraordinary"—*i.e.*, exceptional or uncommon. *United States v. Wilson*, No. 3:18-cr-195, 2021 WL 412272, at *3 (E.D. Tenn. Feb. 5, 2021). It must also be "compelling"—*i.e.*, "so great that irreparable harm or injustice would result if the relief is not granted." *United States v. Sapp*, No. 14-CR-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020). And it must "warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

As the movant, Carpenter has the burden to establish his eligibility for a sentence reduction. *E.g.*, *United States v. Rodriguez*, 896 F.2d 1031, 1033 (6th Cir. 1990) (reasoning that a criminal defendant has the burden to prove facts that could decrease his sentence, because the "burden of proof is ordinarily placed upon the party who benefits from the establishment

of a fact"). He "cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP, or making sweeping allegations about a prison's ability or lack thereof to contain an outbreak." *United States v. Wright*, No. CR-16-214-04, 2020 WL 1976828, at *5 (W.D. La. Apr. 24, 2020).

**Argument**

As a preliminary matter, to the extent Carpenter seeks relief based on prison conditions or the Bureau of Prisons' pandemic response (*e.g.*, Doc. 590, Motion at 3 (asserting that "BOP Precautions Have Not Been Effective in Protecting Inmates from COVID-19")), such claims are not properly reviewable in a motion for compassionate release and should instead be raised, if at all, in a separate civil suit, after exhausting available administrative remedies. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (recognizing that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment," and that such claims are actionable in a civil proceeding under 42 U.S.C. § 1983); *Helling v. McKinney*, 509 U.S. 25, 35 (1993) (same, as to deliberate indifference about exposure to conditions "that pose an unreasonable risk of serious damage to . . . future health"); 42 U.S.C. § 1997e(a) (requiring exhaustion of administrative remedies before filing an action regarding "prison conditions"). Moreover, such a suit would have to be filed in the district of confinement, and Carpenter is not confined within this district.

The COVID-19 pandemic poses a threat to every person worldwide, so it is not a basis for a sentence reduction on its own. *E.g.*, *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). But courts have "recognized that an inmate's especially heightened risk of infection and risk of developing severe complications from COVID-19 based on [his] specific medical history may constitute 'extraordinary and compelling' reasons to grant compassionate release." *United

*States v. Williams*, No. 3:11-cr-172, 2020 WL 6826740, at *5 (D. Conn. Nov. 20, 2020); *accord United States v. Barnes*, No. 3:13-cr-117, 2020 WL 3791972, at *6 (E.D. Tenn. July 7, 2020).

"Courts considering defendants' medical vulnerability from COVID 19 ordinarily look to the CDC's guidance on at-risk health populations." *Williams*, 2020 WL 6826740, at *5. Indeed, "[r]elying on official guidelines from the CDC is a common practice in assessing compassionate-release motions." *Elias*, 984 F.3d at 521. And the Centers for Disease Control has identified certain conditions as elevating the risk of severe illness from COVID-19, defining severe illness, in turn, as requiring hospitalization or even causing death. *See* Medical Conditions and Risk for Severe COVID-19 Illness, Centers for Disease Control, *available at* https://www.cdc.gov/corona virus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Feb. 22, 2021; accessed Mar. 15, 2021). Many courts thus consider whether "(1) the defendant is at high risk of having grave complications should he contract COVID-19," and whether "(2) the prison where the defendant resides has a severe COVID-19 outbreak." *United States v. Howell*, No. 1:19-cr-242, 2020 WL 6876124 (N.D. Ohio, Nov. 23, 2020); *see also Elias*, 984 F.3d at 521 n.1 (finding no abuse of discretion in the use of that two-part test).

Carpenter's facility has previously experienced two COVID-19 outbreaks, as shown on the following page, but it has just one known active inmate case now. COVID-19 Cases, Federal Bureau of Prisons, *available at* https://www.bop.gov/coronavirus/ (accessed Mar. 17, 2021).



COVID-19 Dashboards, Federal Bureau of Prisons, *available at* https://experience.arcgis.com/experience/ab22fb4c564e4f4b986e257c685190e8/ (accessed Mar. 17, 2021).

Carpenter asserts that he is particularly vulnerable to COVID-19 due to hypertension, diabetes, obesity, hyperlipidemia, and a history of pneumonia, and he provided medical records showing that he has hypertension and type 2 diabetes. (Doc. 590, Motion at 1; Doc. 595, Sealed

10

Medical Records at 18.) Additional medical records from the Bureau of Prisons reference hyperlipidemia and reveal that Carpenter has a body mass index of 31.5, but Carpenter's claim about prior pneumonia is uncorroborated. (Exhibit 4, Additional Medical Records, filed separately under seal.) *See also* Adult BMI Calculator, Centers for Disease Control, *available at* https://www.cdc.gov/healthyweight/assessing/bmi/adult-bmi/english_bmi_calculator/bmi_ calculator.html (accessed Mar. 17, 2021). The CDC has recognized type 2 diabetes and obesity (defined as a body mass index of 30 or greater) as increasing the risk of severe illness from COVID-19, also noting that hypertension *might* increase that risk. Medical Conditions and Risk for Severe COVID-19 Illness, Centers for Disease Control, *available at* https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Feb. 22, 2021; accessed Mar. 15, 2021). All three of those conditions, however, are common:

- 34.2 million people in the United States have diabetes, 90 to 95 percent of whom have type 2 diabetes, *see* A Snapshot: Diabetes in the United States, Centers for Disease Control, *available at* https://www.cdc.gov/diabetes/pdfs/ library/socialmedia/diabetes-infographic.pdf (accessed Mar. 11, 2021);

- more than 42 percent of all Americans over age 20 have a body mass index above 30, *see* Obesity & Overweight, Centers for Disease Control, *available at* https://www.cdc.gov/nchs/fastats/obesity-overweight.htm (accessed Mar. 11, 2021); and

- "hypertension is a common medical condition shared by over 100 million Americans," *United States v. Simmons*, No. 18-CR-20587, 2020 WL 4529843, at *2 (E.D. Mich. Aug. 6, 2020).

Because the CDC has recognized that some of Carpenter's conditions increase his risk of severe illness from COVID-19, were he to contract it, the Court could find—despite the low incidence of COVID-19 at his facility at this time—that Carpenter has established an extraordinary and compelling reason for release.

But that is not the end of the inquiry. Even if this Court finds that Carpenter has an extraordinary and compelling reason for release, it must also consider the 18 U.S.C. § 3553(a) factors. *E.g.*, *Ruffin*, 978 F.3d at 1008-09 (affirming denial of release for defendant who had served less than half of his sentence); *United States v. Oliver*, No. 2:17-cr-20489, 2020 WL 2768852, at *2, *7 (E.D. Mich. May 28, 2020) (denying release of defendant with COVID-19 risk factor—a BMI of 53.1—because it would "lead to unwarranted sentencing disparities and improperly minimize the serious nature of [the] offense").

Carpenter's offense was unquestionably serious, as evidenced by the fact that Congress mandated a ten-year minimum sentence for it. (Doc. 211, Sealed Presentence Report at ¶ 67.) By his own admission, Carpenter conspired to distribute at least 150 grams of methamphetamine and possessed a firearm in connection with that drug-trafficking activity. (*Id*. at ¶¶ 15-16.) This Court calculated the applicable guideline range as 188 to 235 months' imprisonment, but decided that a lesser term of 172 months' imprisonment would be sufficient to satisfy the § 3553(a) factors. (Doc. 487, Judgment; Doc. 488, Sealed Statement of Reasons.)

So far, Carpenter has served just 44 months in custody (Exhibit 3, Sentence Computation Data), and the Court may rightly consider "the amount of time served in determining whether a sentence modification is appropriate." *United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020). Even accounting for earned and projected good-time credit, Carpenter has not yet served half of the statutorily mandated minimum for his offense, *see* 21 U.S.C. § 841(b)(1)(A), and has more than eight years remaining on his sentence. *See* Inmate Locator, Federal Bureau of Prisons, *available at* https://www.bop.gov/inmateloc/ (accessed Mar. 17, 2021). And the Sixth Circuit has previously affirmed a determination that "releasing [a defendant] before he had served even

the low end of his guidelines range . . . would create unwarranted sentencing disparities." *United States v. Sargent*, No. 20-5508, 2020 WL 6589004, at *2 (6th Cir. Sept. 30, 2020).

Reducing Carpenter's sentence to time served would be inconsistent with the § 3553(a) factors, especially "the nature and circumstances of the offense," § 3553(a)(1); "the need for the sentence imposed to reflect the seriousness of the offense . . . and to provide just punishment," § 3553(a)(2)(A); "the sentencing range established" by the Guidelines (here, 188 to 235 months' imprisonment), § 3553(a)(4); and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," § 3553(a)(6).

## Conclusion

Carpenter's motion for release should be denied because he has not established that his immediate release is justified under 18 U.S.C. §§ 3553(a) and 3582(c)(1)(A).

                                            Respectfully submitted,

                                            Francis M. Hamilton, III
                                            Acting United States Attorney

        by:    *s/ Debra A. Breneman*
                  Debra A. Breneman
                  Assistant United States Attorney
                  PA Bar No. 93171
                  debra.breneman@usdoj.gov
                  800 Market Street, Suite 211
                  Knoxville, Tennessee 37902
                  (865) 545-4167