UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:17-CR-066 |
| | ) | |
| CURTIS CARPENTER | ) | |

## MEMORANDUM AND ORDER

Now before the Court is the defendant's counseled and renewed motion for compassionate release pursuant to 18 U.S.C. 3582(c)(1)(A)(i). [Doc. 590].[1] The United States has responded in opposition [doc. 596], and the defendant has not replied within the time allowed by this court's Local Rules. For the reasons that follow, the defendant's motion will be denied.

## I.     BACKGROUND

Less than three years ago, this Court sentenced the defendant to a below guidelines sentence of 172 months' imprisonment for conspiring to distribute methamphetamine. The defendant is presently housed at FCI Edgefield with a projected release date of September 30, 2029. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Mar. 31, 2021). He now moves for compassionate release due to the COVID-19 pandemic, hypertension, high cholesterol, diabetes, obesity, age (46), "and a history of pneumonia."

---

[1] A prior *pro se* motion [doc. 553] was denied for failure to exhaust administrative remedies. [Doc. 554].

[Doc. 590, p. 1, 12].[2]  Defense counsel further contends that, if released, the defendant

"would present virtually zero risk of danger to the community."  [Doc. 590, p. 2].

## II.  COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to

consider prisoner motions for sentence reduction upon a finding of "extraordinary and

compelling reasons."  That statute, as amended by the First Step Act of 2018, provides in

relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or
> upon motion of the defendant after the defendant has fully exhausted all
> administrative rights to appeal a failure of the Bureau of Prisons to bring a
> motion on the defendant's behalf or the lapse of 30 days from the receipt of
> such a request by the warden of the defendant's facility, whichever is earlier,
> may reduce the term of imprisonment (and may impose a term of probation or
> supervised release with or without conditions that does not exceed the unserved
> portion of the original term of imprisonment), after considering the factors set
> forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction ... and
> > that such a reduction is consistent with applicable policy statements issued
> > by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i).  Prior to the First Step Act, a motion for compassionate

release could only be brought by the BOP Director, not a defendant.    *See* 18 U.S.C. §

3582(c)(1)(A) (2017).  The First Step Act amended § 3582(c)(1)(A) to allow a defendant

to file a motion for compassionate release after first asking the BOP to file such a motion

on his behalf.  *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

---

[2] The defendant also raises arguments pertaining to his conditions of confinement.  Such claims might be cognizable, *see, e.g., Estelle v. Gamble*, 429 U.S. 97 (1976), but they should be presented in a civil lawsuit in the prisoner's district of confinement after the exhaustion of administrative remedies.  *See* 42 U.S.C. § 1997e(a).  There is no evidence that this defendant has exhausted his administrative remedies on those claims, nor is he incarcerated in this judicial district.

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. District courts in this circuit have previously turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but, as of November 20, 2020, are no longer to do so, at least as to compassionate release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) ("[H]olding" that guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release."); *accord United States v. Elias*, 984 F.3d 516 (6th Cir. 2021).[3] "District courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114.

## A. Exhaustion

The defendant has previously submitted a compassionate release request to the BOP, and more than 30 days have passed since that request was received by the warden. [Doc. 596, ex. 1]. The Court thus has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

## B. Merits

As mentioned above, in support of his motion the defendant cites the COVID-19 pandemic, hypertension, high cholesterol, diabetes, obesity, age (46), "and a history of pneumonia." It is further argued that the defendant "would present virtually zero risk of danger to the community" if released. Consistent with § 3582 and the Sixth Circuit's

---

[3] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

3

holding in *Jones*, this Court has considered the defendant's arguments (individually and in combination) along with the broader facts of this case in light of the pertinent § 3553(a) factors.  Pursuant to 18 U.S.C. § 3553(a),

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.  The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>>
>>> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>>>
>>> (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .
>
> . . .

4

(5) any pertinent policy statement—

    (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

    (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

At the defendant's correctional institution, there are currently zero inmates and 23 staff positive for COVID-19, with 218 inmates and 10 staff having recovered, and three inmate deaths. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Mar. 31, 2021). These numbers are not insignificant, but the Court simultaneously notes that outside the prison setting our nation remains in grave crisis in terms of COVID diagnoses, variants, hospitalizations, and deaths. Further, the COVID-19 pandemic cannot alone justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate

5

release[.]").  Additionally, the BOP's vaccination efforts are underway, with 159 staff and 74 inmates having been fully vaccinated at the defendant's prison.  *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Mar. 31, 2021).

BOP medical records confirm that the defendant is obese. [Doc. 600].  Those records also show that the defendant has been diagnosed with, and receives treatment for, type 2 diabetes, hypertension, and high cholesterol.  [Docs. 595, 600].  To a private physician, the defendant has reported a prior bout with pneumonia.  [Presentence Investigation Report ("PSR"), doc. 211, ¶ 59].

Hypertension, type 2 diabetes, and obesity are presently considered to be factors which can create an increased risk of severe illness from COVID-19, and the danger of COVID-related complications generally increases with age.  *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Mar. 31, 2021).  The BOP's SENTRY Report shows that the defendant is categorized as Care Level 2.  "Care Level 2 inmates are stable outpatients who require clinician evaluations monthly to every 6 months. Their medical . . . conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring.  Enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time." *See* http://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited Mar. 31, 2021).

In light of the defendant's obesity, hypertension, and type 2 diabetes, the United States concedes that the Court "could find" extraordinary and compelling reasons for

6

compassionate release. [Doc. 596, p. 11]. Accordingly, and for purposes of the instant motion only, the Court will presume—without finding—that the defendant has carried his burden of establishing extraordinary and compelling reasons.

Turning to the nature and circumstances of the instant offense and the defendant's history and characteristics, the defendant's prior convictions present a troubling pattern of drug offenses and weapons possession. In 2005, the defendant was arrested in possession of at least four different drugs, electronic scales, and several loaded firearms. [Doc. 211, ¶ 35]. The following year, he was arrested in possession of 1.5 grams of methamphetamine, a handgun, and "four pounds of drain opener," plainly suggesting involvement in the manufacture of methamphetamine. [*Id.*, ¶ 36].

In 2007, the defendant was arrested in possession of a handgun while he was a passenger in a vehicle containing suspected methamphetamine, digital scales, baggies, and an array of ingredients used in methamphetamine manufacture. [*Id.*, ¶ 37]. On that same day, he was also arrested for driving under the influence, unlawful possession of a weapon, and drug offenses. [*Id.*, ¶ 38]. Inside his vehicle were methamphetamine, scales and baggies, brass knuckles, and a rifle. [*Id.*].

In 2010, the defendant was again arrested and convicted for multiple drug offenses. [*Id.*, ¶ 39]. Inside his vehicle were a loaded handgun and a loaded rifle. [*Id.*]. The following month, the defendant was again arrested and subsequently convicted for possession of numerous drugs and drug paraphernalia. [*Id.*, ¶ 40]. There was another arrest and conviction in 2013 for possession of drug paraphernalia and promotion of methamphetamine manufacture. [*Id.*, ¶ 42].

Case 2:17-cr-00066-RLJ-MCLC   Document 601   Filed 04/05/21   Page 7 of 9   PageID #: 3806

The defendant admittedly sold methamphetamine approximately ten times per month during his participation in the instant conspiracy. [*Id.*, ¶ 13]. During one sale of more than seven grams of methamphetamine there were three firearms on the defendant's bed, and he claimed to have a silencer. [*Id.*, ¶ 11]. A search of the defendant's home one week later revealed methamphetamine, "a Maryland police badge, a police scanner, digital scales, two firearms, a surveillance system, and a variety of bullets/shotgun shells." [*Id.*, ¶ 12].

According to SENTRY, the BOP considers the defendant a minimum-security inmate with a low risk of recidivism. The Court considers those assessments to be inconsistent with the defendant's criminal history.

SENTRY further shows that the defendant is employed, has completed a small amount of programming, and has incurred no disciplinary sanctions during his current term of imprisonment. For these things, he is commended.

Those points are, however, strongly outweighed by the defendant's lengthy criminal history involving drugs and weapons—a combination which presents an elevated risk of harm to the community. The defendant's preexisting conditions of hypertension, diabetes, and obesity [doc. 211, ¶¶ 57-59] were insufficient to deter his drug distribution and weapons possession in this case. Additionally, more than eight years of actual time remains on his federal sentence. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) (Several § 3553(a) factors "permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). Compassionate release on the facts of this case would not reflect the seriousness of the offense of conviction, would not promote respect for the law or provide just punishment, and would not afford adequate

deterrence or protect the public from future crimes of this defendant.

## III.    CONCLUSION

As provided herein, the defendant's renewed motion for compassionate release [doc. 590] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge